

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 22, 2021

<u>BY ECF</u>
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      **Re:**    *Wade Quiah v. United States*, 20 Civ. 4000 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this letter brief in opposition to defendant Wade Quiah's *pro se* motion under 28 U.S.C. § 2255.  (Civ. Dkt. 1 ("Def. Mot")).[1]  For the reasons set forth below, the defendant's motion should be denied.

**I.**    **Background**

      The defendant was a member of a criminal organization known as the "East Homicide Brims," a set of the Bloods street gang, whose members and associates engaged in acts of violence through racketeering acts.  (PSR ¶ 16).

      **A.  Offense Conduct**

      On August 21, 2011, the defendant and other members of the Bloods attended a picnic in the Bronx.  (PSR ¶ 17).  When the victim in this case, Eric Reid, arrived at the picnic, Bloods members confronted Reid regarding an allegation that he had cooperated with law enforcement officials against another member of the gang.  (*Id.*).  The bloods members then assaulted Reid. During this assault, the defendant shot Reid multiple times, killing him.  (*Id.*; Crim. Dkt. 46 ("Sentencing Tr.") at 24-25).  Reid was only seventeen years old.  The defendant killed Reid "[t]o maintain [his] status in the Bloods" and as a means of enforcing gang discipline.  (Crim. Dkt. 33 ("Plea Tr.") at 11; Sentencing Tr. 25; PSR at 15).

---

[1] "Civ. Dkt." refers to an entry on the civil docket for this motion; "Crim. Dkt." refers to an entry on the docket of the defendant's criminal case, 11 Cr. 739 (PGG).  "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Quiah's sentencing.

### B.  Procedural History

On August 31, 2011, the defendant was charged in a two-count Indictment alleging violations of 18 U.S.C. §§ 924(j) and 2 (Count One), and 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Two).  (Crim Dkt. 2).  The Indictment also set forth certain special findings related to the eligibility of the defendant to receive the death penalty.  (*Id.*).

On December 20, 2013, the defendant pleaded guilty to Count One of the Indictment, pursuant to a plea agreement.  (*See* Plea Tr.; Crim Dkt. 43).  At the beginning of defendant's change of plea proceeding, the defendant confirmed that he had had time to talk to his counsel about the charges and his plea, that he was satisfied with his counsel, and that he was ready to plead guilty.  (Plea Tr. 3-4).  At the proceeding, the Government proffered the following regarding the charges and the defendant's plea:

> The defendant is charged with . . . a violation of Title 18 United States Code Section 924(j). That crime has four elements: First, that on or about the date alleged in the indictment, in this case August 21, 2011, the defendant used, carried or possessed a firearm; second, that he did so willfully and knowingly; third, that he used or carried the firearm during and in relation to a crime violence for which he could be prosecuted in a court of the United States or that he possessed the firearm in furtherance of such a crime of violence; and fourth, that in so doing he caused the death of any person. In this case, the crime of violence alleged is assault in aid of racketeering and attempted murder in aid of racketeering. That in turn is a charge under Title 18 United States Code Section 1959, which has three elements: First, that there existed an enterprise engaged in racketeering activity. In this case, the government alleges that the defendant was a member of the East Homicide Brims set of the Bloods street gang and that that was an enterprise as defined under the statute; second, that the defendant committed the crime alleged, that is assault with a dangerous weapon, assault resulting in serious bodily injury and attempting or conspiring to commit murder; and third, that the defendant committed that crime for the purpose of gaining entrance to, increasing his position in, or maintaining his position in the enterprise.
>
> In this case, if the trial -- if the case were to proceed to trial, the government would have presented evidence in the form of testimony by law enforcement witnesses, cooperating witnesses, and recorded conversations which establish that on August 21, 2011 the defendant was present in a park in the Bronx where he shot and killed a victim whose name was Eric Reid and that he did so because he was a member, that is Mr. Quiah was a member of the East Homicide Brims set of the Bloods street gang and he wanted to either increase or maintain his position in that gang.

(*Id.* at 9-11).  The defendant thereafter admitted that he "shot and killed Eric Reid in the Bronx" on August 21, 2011; that, at that time, the defendant "was a member of the Bloods"; that the defendant's criminal acts were done "[t]o maintain [his] status in the Bloods"; and that the defendant knew his conduct was unlawful.  (*Id.* at 11-12).

On December 30, 2014, the defendant was sentenced principally to 235 months' imprisonment.  (Sentencing Tr. 31).  On November 14, 2014, the judgment was entered.  (Crim. Dkt. 44).  Over five years later, Quiah filed a notice of appeal dated May 5, 2020.  (Crim. Dkt. 49). That appeal remains pending.  *See United States v. Quiah*, No. 20-1632 (2d Cir.).

### C.  Quiah's 2255 Motion

On May 13, 2020, Quiah, proceeding *pro se*, filed a 28 U.S.C. § 2255 motion collaterally challenging his conviction under Count One.  (Def. Mot.).  The defendant's motion asserts four grounds for his release from custody.  First, Quiah asserts an ineffective assistance ground, stating: "My indictment doesn't charge an underlying crime of violence or drug trafficking[. H]owever it charges a 924(c) which requires an underlying offense. [H]ad this been argued [m]y indictment would've been dismissed."  (Def. Mot 6).  Second, Quiah asserts a jurisdictional ground, stating: "Without a formal & sufficient indictment a court doesn't acquire jurisdiction. My 924(c) lacks an underlying federal crime which is a jurisdictional requirement[. I]t references general assault but assault isn't a federal crime & to charge the two in the same count would be multiplicitous."  (*Id.*) Finally, Quiah's third and fourth grounds more generally assert the legal insufficiency or defectiveness of his Indictment, claiming violations of the Fourteenth Amendment and due process because the Indictment was "fatally defective" and not "in accordance with constitutional or statutory law," respectively.  (*See id.* Mot. 5-6).

On May 26, 2020, the Court ordered the Government to respond to the 2255 motion (Civ. Dkt. 2), and, on January 8, 2021, issued a second order for the Government respond (Civ. Dkt. 3).

In a filing dated June 8, 2020 (the "June 8 Filing"), and addressed to and received by the Second Circuit, Quiah appears to reiterate some of his 2255 claims.  (Crim. Dkt. 52).  Quiah states that his 924(c) and 924(j) charges were "absent of an underlying federal crime," which led to the violations listed in the May 13, 2020 fliing motion.  (Crim Dkt. 52, at 2).  In addition, the June 8 Filing states: "Also *Davis v. United States of America* (I didn't file *Davis* issue but if I can add it I wish to)."  (*Id.*).[2]

---

[2] The Government had not reviewed this entry on the criminal docket, which was not filed on the civil docket or subject to the Court's orders to respond, until today.  To the extent that, through this filing, Quiah has now brought a claim under *United States v. Davis*, 139 S. Ct. 2319 (2019) in these 2255 proceedings—one that raises, in particular, whether assault under 18 U.S.C. § 1959(a)(3) qualifies as a "crime of violence"—the Government respectfully requests that Quiah's motion be stayed pending the Second Circuit's decision in *United States v. Morris*, No. 16-0006-cr (2d. Cir), which presents that precise question.  *See Wang v. United States*, No. 13-CV-3524 DLI, 2015 WL 1966465, at *2 (E.D.N.Y. Apr. 30, 2015) (staying habeas proceedings pending the disposition of a Supreme Court case involving "the same question of law," in the interest of "judicial economy"); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) ("'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))).  A stay is also appropriate given Quiah's pending appeal.  *See United States v. Jiau*, 536 F. App'x 140 (2013) (explaining that while there is no jurisdictional bar to adjudicating a

## II.     Applicable Law

Section 2255 permits a defendant, within the one-year limitation period set forth in Section 2255(f), to move "to vacate, set aside or correct [his] sentence" on the ground that it "was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a), (f)(3).  Relief under § 2255 is narrow and is "generally available . . . only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III.    Discussion

For purposes of the Section 2255 analysis, Quiah's motion raises two types of claims.  First, Quiah brings an ineffective assistance claim based on his counsel's failure to seek dismissal of the Indictment as legally insufficient or defective.  Second, Quiah brings a claim—similar to the first, but not through the lens of ineffective assistance of counsel—that the Indictment presented a jurisdictional defect or was otherwise insufficient.  18 U.S.C. § 924(c)(1)(A).

Quiah's motion should be denied for several reasons.  *First*, Quiah's claims are barred by Section 2255's one-year limitation period.  *Second*, with respect to Quiah's ineffective assistance claim, even assuming it were not untimely, Quiah cannot satisfy either prong of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Third*, any non-ineffective-assistance claim (or "direct" claim) has been procedurally defaulted.  *Finally*, even assuming any "direct" claim were not untimely and not procedurally defaulted, it fails on the merits.

### A.  All of Quiah's Claims Are Untimely

#### 1.  Applicable Law

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), established a one-year statute of limitations period in which to bring a motion attacking a federal sentence under 28 U.S.C. § 2255.  The one-year limitations period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

2255 motion during an appeal's pendency, "concerns for judicial economy generally counsel against adjudicating such motions").  Alternatively, the Government is prepared to address *Davis* in a supplemental response, in which case the Government would respectfully request 30 days to file such a submission.

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date in which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Under Federal Rule of Appellate Procedure 4(b), a defendant's notice of appeal from a judgment of conviction must be filed within fourteen days. Fed. R. App. P. 4(b)(1)(A)(I). If a criminal defendant does not appeal, the judgment of conviction becomes final when the time period for filing an appeal expires, fourteen days after entry of the judgment. *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir.2005) (holding that "for purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires").

Because statutes of limitations protect the "systemic interests in finality . . . and conservation of judicial resources," *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000) (quoting *Schlup v. Delo*, 513 U.S. 298, 322 (1995)), the one-year statute of limitations for bringing a § 2255 petition is subject to equitable tolling only in "rare and exceptional circumstances." *Smith* v. *McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). The Second Circuit has "established only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary, [ ] where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers," *Doe* v. *Menefee*, 391 F.3d 147, 159 (2d Cir. 2004), and where mental illness prevented the timely filing, *Bolarinwa* v. *Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (remanding for factual findings of the particular impediments caused by petitioner's serious mental illness, which included hospitalizations). Thus, "*pro se* status does not itself constitute an extraordinary circumstance meriting tolling." *Doe* v. *Menefee*, 391 F.3d at 159; *see Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999) (stating that "neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling"). Ignorance of the limitations period likewise does not provide a ground for tolling the limitations period. *See Felder* v. *Johnson*, 204 F.3d 168, 172 (5thCir. 2000); *Fisher v. Johnson*, 174 F.3d710, 714 (5th Cir. 1999) (ignorance of AEDPA's limitations period generally does not warrant tolling); *Miller* v. *Marr*, 141 F.3d 976,978 (10th Cir. 1998) (no equitable tolling where prisoner claimed that he lacked access to federal statutes and case law and only learned of the AEDPA limitations period after it had expired); *United States* v. *Griffin*, 58 F. Supp. 2d 863, 869 (N.D. Ill. 1999) ("run-of-the-mill claim of ignorance of the law is insufficient to warrant equitable tolling of § 2255's limitations period"); *Velasquez* v. *United States*, 4 F. Supp. 2d 331, 333-34 (S.D.N.Y. 1998) (Bureau of Prisons's failure to notify prisoners regarding AEDPA's time limitation did not warrant acceptance of untimely petition).

### 2. Discussion

All of Quiah's claims are untimely.  Quiah's judgment of conviction was entered over six years ago, on November 14, 2014, and Quiah did not appeal his conviction.  As a result, the one-year statute of limitations period began running 14 days after entry of judgment, to wit, on November 28, 2014.  *See Moshier*, 402 F.3d at 118; Fed. R. App. P. 4(b)(1)(A)(I).  The period in which Quiah could raise his Section 2255 claims therefore expired on November 28, 2015—over five years ago.  Quiah does not assert and the record does not suggest that any exception to the statute of limitations applies, or that equitable tolling is otherwise even arguably applicable here.  In particular, *pro se* status does not excuse a Section 2255's timeliness.  *See Menefee*, 391 F.3d at 159.  Accordingly, Quiah's motion should be denied in its entirety as untimely.

### B. Quiah's Ineffective Assistance Claim Cannot Satisfy *Strickland*

Even if Quiah's ineffective assistance of counsel claim were not untimely, it fails to satisfy the *Strickland* standards. Quiah cannot show that his counsel's performance fell below an objective standard of reasonableness by not moving to dismiss the Indictment.  Nor, even assuming that counsel's performance was constitutionally deficient, can Quiah show that he would not have pleaded guilty and would have instead insisted on going to trial.

### 1. Applicable Law

### a. Ineffective Assistance of Counsel

A defendant claiming ineffective assistance of counsel must: (1) show that counsel's representation fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from counsel's allegedly defective performance.  *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984); *see also Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000).  Only if both elements are satisfied can a defendant demonstrate that his counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that the defendant was, as a result, deprived of a fair proceeding.  *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'"  *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).

Even if an attorney's performance was objectively unreasonable, the defendant must also "affirmatively prove prejudice," *Strickland*, 466 U.S. at 693, by showing a reasonable likelihood that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A defendant cannot establish prejudice by showing merely that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  *Id.* at 693.

Thus, in raising a claim of ineffective assistance of counsel, "[t]he petitioner's burden is a heavy one." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012).

When a defendant claims that counsel was ineffective in connection with a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002). Some of the factors considered in determining whether a defendant would have insisted on going to trial rather than plead guilty include:

> (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty.

*Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013).

In addition, in evaluating prejudice in the context of a guilty plea, the Supreme Court has explained that the prejudice inquiry "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial," that is, an evaluation of whether, absent the error, the defendant would have succeeded had he gone to trial. *Hill*, 474 U.S. at 59.

### b. Sufficiency of an Indictment

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (citing *Jones v. United States*, 526 U.S. 227, 232 (1999); *Hamling v. United States*, 418 U.S. 87, 117 (1974); Fed. R. Crim. P. 7(c)). "A defendant faces a 'high standard' in seeking to dismiss an indictment." *United States v. Thompson*, No. 13 Cr. 378 (AJN), 2013 WL 6246489, at *6 (S.D.N.Y. Dec. 3, 2013) (quoting *United States v. Post*, No. 08 Cr. 243 (KMK), 2013 WL 2934229, at *5 (S.D.N.Y. June 3, 2013)).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Rule 7(c) (alterations omitted)). To satisfy this rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted). Although there are circumstances in which greater specificity is required to pass muster under Rule 7(c) and the constitutional provisions it implicates, that heightened standard is limited to "very rare cases," such as those involving refusal to answer questions before Congress, in which "specification of how a particular element of criminal charge will be met . . . is of such importance to the fairness of the proceeding that it must be spelled out in the indictment." *United States v. Stringer*, 730 F.3d 120, 125-26 (2d Cir. 2013) (discussing the special case of *Russell v. United States*, 369 U.S. 749 (1962)). Otherwise, "[a]n indictment is sufficient if it 'first, contains the elements of the offense

charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling*, 418 U.S. at117); *Yannotti*, 541 F.3d at 127.

Even in cases involving very bare-bones charges, courts will not dismiss the indictment absent a showing of prejudice. *Stringer*, 730 F.3d at 124. Where a defendant has been given sufficient notice of the charges against him by means of, for example, discovery materials or a bill of particulars, prejudice will not have been shown, and the indictment should stand. *See, e.g.*, *Stringer*, 730 F.3d at 124-25; *Yannotti*, 541 F.3d at 127; *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.1992).

### c. Sections 924(c), 924(j), and 1959(a)(3)

Section 924(c) is violated by persons "who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). To prove a violation of Section 924(c) where, as here, the underlying crime is one of violence, the Government is required to prove three elements: (1) "the defendant committed a crime of violence . . . for which he might be prosecuted in a court of the United States"; (2) "the defendant knowingly used . . . a firearm during and in relation to the commission of . . . the crime [of violence]." 2 Modern Federal Jury Instructions-Criminal P 35.14 (2020). If the defendant is also charged with discharging the firearm, the Government must also prove that as additional element. *Id.*

Where an offender, "in the course of a violation of [18 U.S.C. § 924(c)], causes the death of a person through the use of a firearm," that person violates Section 924(j), which provides enhanced maximum penalties. *See* 18 U.S.C. § 924(j) (providing, through statutory cross-references, increased maximum penalties for murder and manslaughter); *United States v. Pizzaro*, 797 F. App'x 607, 609 (2d Cir. 2020) (Section 924(j) "expressly incorporates by reference Section 924(c)"). To prove a violation of Section 924(j), the Government is required to prove the elements of 924(c) and that the defendant's use of the firearm caused a person's death. *See United States v. Rivera*, 679 F. App'x 51, 54 (2d Cir. 2017) (rejecting challenge to Section 924(j) conviction because "§ 924(j) expressly incorporates § 924(c) by reference, and the indictment pleaded each of the elements of the crime reflected in these two statutory sections"); *United States v. Rivera*, 13 Cr. 424 (KMW), ECF No. 1 (Indictment).

The Violent Crimes in Aid of Racketeering ("VICAR") statute, 18 U.S.C. § 1959, criminalizes, among other offenses, assault in aid of racketeering activity. As relevant here, the VICAR statute provides as follows:

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any

individual in violation of the laws of any State or the United States, or attempts or
conspires so to do, shall be punished—

. . .

(3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by
imprisonment for not more than twenty years or a fine under this title, or both.

18 U.S.C. § 1959(a)(3).

### 2. Discussion

#### a. Counsel's Decision Not To Seek Dismissal of the Indictment Was Far from Unreasonable

Quiah's counsel's decision not to seek dismissal of the Indictment was far from objectively
unreasonable. To the extent that Quiah's ineffective assistance claim is in turn based on a claim
that his Indictment was insufficient (and thus his counsel should have sought its dismissal), Quiah
is wrong. The Indictment here pled the elements of the crimes charged, "track[ed] the language
of the statute charged and stat[ed] the time and place (in approximate terms) of the alleged crime."
*Yannotti*, 541 F.3d at 127. No more was required. *United States v. Balde*, 943 F.3d 73, 89 (2d
Cir. 2019) ("[T]he standard for the sufficiency of an indictment is not demanding.").

To the extent Quiah contends, more particularly, that the Indictment pled only an
underlying "general assault . . . [that] isn't a federal crime," he is incorrect. (Def. Mot. 6).[3] Both
counts of the Indictment pled an underlying crime of violence that "may be prosecuted in a court
of the United States." 18 U.S.C. § 924(c). Specifically, each count identified the underlying crime
of violence as "the assault of another member of the defendant's gang, Eric Reid," a violation of
18 U.S.C. § 1959(a)(3), the VICAR assault provision. While the Indictment did not include the
statutory citation to that crime, such a citation is not required. *See* Fed. R. Crim. P. 7(c)(2) ("Unless
the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's
omission is a ground to dismiss the indictment or information or to reverse a conviction."); *see,
e.g.*, *Rivera*, 679 F. App'x at 54 (rejecting challenge to 924(j) count, which did not include a
statutory citation for the underlying predicate crime). Quiah, who was represented by experienced
criminal counsel, clearly had notice of the federal offense charged as the underlying crime of
violence, including its statutory citation, at a minimum from the Government's detailed proffer at
his plea hearing. (*See* Plea Tr. 9-11 (providing the statutory citation for 18 U.S.C. § 1959 and its
elements)). Quiah then proceeded to plead guilty and admitted all the elements of Count One,
including the elements of 18 U.S.C. § 1959(a)(3).

Relatedly, to the extent Quiah claims that his Indictment was "multiplicitous" for pleading
both state and federal assault as the underlying crime of violence (Def. Mot. 6), that argument is
likewise meritless. For one, Quiah's claim of multiplicity regarding the underlying crime of
violence is legally confused. *See United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999)
(multiplicitous indictment creates an exaggerated impression of criminal activity by charging "an

---

[3] While this language is from Quiah's "jurisdictional" ground, it suggests this may be Quiah's
underlying argument with respect to his ineffective assistance claim as well.

offense multiple times, in separate counts, when, in law and fact, only one crime has been committed"); *United States v. Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013) (test from *Blockburger v. United States*, 284 U.S. 299 (1932), applies to ascertain "whether each offense contains an element not contained in the other, and provides that, if not, they are the same offen[s]e and double jeopardy bars additional punishment"). It is also factually mistaken, for the predicate crime was VICAR assault, as explained above.

Next, to the extent Quiah is arguing that the Indictment had to "charge" (Def. Mot. 6) the underlying crime of violence as a separate count in the Indictment, that argument is foreclosed by clear Second Circuit precedent. "The plain language of § 924(c) requires only that the predicate crime of violence (or drug trafficking) have been committed; the wording does not suggest that the defendant must be separately charged with that predicate crime and be convicted of it." *Johnson v. United States*, 779 F.3d 125, 129–30 (2d Cir. 2015).

Finally, to the extent Quiah contends his counsel should have sought dismissal after Quiah's guilty plea, that argument faces an additional hurdle: by pleading guilty, Quiah waived all non-jurisdictional challenges to the Indictment. *Balde*, 943 F.3d at 88; *United States v. Yousef*, 750 F.3d 254, 258 (2d Cir. 2014). "A *jurisdictional* argument — *i.e.* one that would survive waiver by a valid guilty plea — is one where a defendant demonstrates that the 'face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense.'" *Balde*, 943 F.3d at 88 (quoting *Yousef*, 750 F.3d at 259); *see also United States v. Bastian,* 770 F.3d 212, 217 (2d Cir. 2014) ("A defect qualifies as jurisdictional only if it alleges that the face of the defendant's indictment discloses that the count to which he pleaded guilty failed to charge a federal offense, such that the district court lacked the power to entertain the prosecution."). Because the Indictment was sufficient for the reasons explained above, the Indictment certainly met the even lower standard of alleging any federal offense and thereby conferring subject-matter jurisdiction over Quiah's prosecution. *See Balde*, 943 F.3d at 88.

### b. Even Assuming Quiah's Counsel Were Deficient, Quiah Cannot Show Prejudice

Even assuming Quiah could succeed in showing that his counsel's performance was deficient under the first prong of *Strickland*, Quiah cannot establish the prejudice prong of *Strickland*. There is no "reasonable probability that, but for counsel's errors, [Quiah] would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. First, by pleading guilty, Quiah obtained a significant benefit: a three-point reduction his offense level for acceptance of responsibility, and a significantly lower applicable Guidelines range.[4] That lowered Guidelines range was material to the sentence that the defendant actually received. (*See* Sentencing Tr. 31). Indeed, the defendant received a sentence at the bottom of the lower Guidelines range. (*Id.*). Additionally, as evidenced in the Government's proffer at Quiah's plea, the Government's case against Quiah was strong. (Plea Tr. 10-11 (citing available evidence in the

---

[4] Under the November 1, 2014 Guidelines, Quiah's Guidelines range without pleading guilty and accepting responsibility was 324 to 405 months' imprisonment. By pleading guilty and accepting responsibility, Quiah's Guidelines range was reduced to 235 to 293 months' imprisonment. (*See* PSR ¶ 5).

form of "testimony by law enforcement witnesses, cooperating witnesses, and recorded conversations")). In these circumstances, it is not reasonably probable that Quiah would have chosen to proceed to a trial where he faced likely conviction and at least an additional ten-year mandatory-minimum sentence.

### C.  Quiah's "Direct" Claim Is Procedurally Defaulted

In addition to his ineffective assistance claim, Quiah also brings a claim directly arguing that his Indictment should be dismissed and conviction reversed. Any such "direct" claim is procedurally defaulted.

#### 1.  Applicable Law

It is well settled that Section 2255 is not designed as a substitute for a direct appeal, *see United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184-85 (1979), and that a federal prisoner cannot use a Section 2255 motion to litigate questions that could have been raised on direct appeal but were not, *see Rosario v. United States*, 164 F.3d 729, 731 (2d Cir. 1999). Thus, where a defendant has procedurally defaulted a claim by failing to raise it at trial, sentencing, or on direct appeal, the claim may be raised on collateral attack only if the defendant "can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also Rosario*, 164 F.3d at 732 (defendant must demonstrate "either (1) cause for failing to raise the issue, and prejudice resulting therefrom, or (2) actual innocence").

The Supreme Court has made clear that "cause" is measured by a stringent standard of diligence. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("Cause" is "something external to" the defendant which "cannot be fairly attributed to him"). "Cause" to excuse a procedural default may exist where a claim "is so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). A claim is "reasonably available," however, if at the time of the default, it was being raised by litigants and addressed by the courts. *See Bousley*, 523 U.S. at 622-23 (claim not "novel" where judicial decisions in the reporters show that the legal basis for the claim was "reasonably available").

"The 'prejudice' requirement is met by establishing actual prejudice resulting from the errors of which [the defendant] complains. The error must have resulted in substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012). To establish actual prejudice in the guilty plea context, the defendant must show that he was "actually unaware" of the error, and that he "would not have pleaded guilty" if he had known of the error. *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (conviction from guilty plea not subject to collateral attack where defendant's "only claim is of a technical violation of [Rule 11]," and defendant did "not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty."); *Lucas v. United States*, 963 F.2d 8, 13 (2d Cir. 1992) (prejudice can be established by demonstrating that the defendant "did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty"); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (in the context of a claim of ineffective assistance of counsel, "to satisfy

the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

Even if a defendant cannot demonstrate cause for and prejudice from his procedural default, his claim can still be reviewed where "a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991). The Supreme Court has repeatedly emphasized that the term "fundamental miscarriage of justice" means the "actual innocence" of the defendant. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (referring to rule requiring "proper showing of actual innocence" as the "fundamental miscarriage of justice exception" and explaining that the purpose of the exception is "to see that federal constitutional errors do not result in the incarceration of innocent persons"); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that the exception is reserved for those extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). As the Court explained in *Schlup v. Delo*, 513 U.S. 298 (1995):

> To ensure that the fundamental miscarriage of justice exception would remain rare and would only be applied in the extraordinary case, while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the [defendant's] innocence.

*Id.* at 321.

## 2. Discussion

Quiah cannot satisfy these heightened standards. None of the pathways to overcoming procedural default are available here: he cannot establish "cause" preventing him from raising this issue on direct appeal, he cannot demonstrate that he suffered any prejudice, and he cannot demonstrate—nor does he suggest—"actual innocence" of the Section 924(j) count.

As an initial matter, Quiah cannot show "cause" for failing to raise his claim on direct appeal. To overcome a procedural default based on the cause-and-prejudice theory, a defendant must first identify cause for the default—that is, "some objective factor external to the defense" that prevented the argument from being presented on direct appeal. *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (citation and quotation marks omitted). Although it is possible to establish cause on the ground that the argument was "so novel that its legal basis [was] not reasonably available to counsel" at the time of appeal, it is not enough to show that "a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 622. Here, the "legal bas[e]s" for the potential arguments in Quiah's 2255 motion are not "novel," *id.*, as illustrated in the discussion above (*see* Sections III(B)(1)(b) and III(B)(2)(a), *supra*). And the fact that the Second Circuit would have rejected Quiah's arguments does not qualify as "cause." *Bousley*, 523 U.S. at 622.

Even if the stringent cause requirement were satisfied, Quiah must further establish that he suffered actual prejudice, which, in the context of a guilty plea, requires a showing that the defendant "did not understand the consequences of his plea or, that if had been properly advised,

he would not have pleaded guilty." *Lucas*, 963 F.2d at 13; *see Timmreck*, 441 U.S. at 784. Quiah cannot do so. Quiah does not assert, much less establish, that he "did not understand the consequences of his plea or, that if had been properly advised, he would not have pleaded guilty." *Lucas*, 963 F.2d at 13. As noted above, the defendant was represented by experienced criminal counsel. At the beginning of defendant's change of plea proceeding, the defendant confirmed that he had had time to talk to his counsel about the charges and his plea, that he was satisfied with his counsel, and that he was ready to plead guilty. (Plea Tr. 3-4). Moreover, as already explained, the defendant obtained a significant benefit by pleading guilty and faced long odds at trial. *See* Section III(B)(2)(b), *supra*.

Lastly, Quiah certainly cannot establish actual innocence. To overcome a procedural default based on actual innocence, the defendant bears the burden of showing that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citations and quotation marks omitted). In this context, " 'actual innocence' means factual innocence, not mere legal insufficiency," and the Government is entitled "to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy." *Id.* at 624. The defendant himself admitted to conduct that satisfied the elements of his conviction. Specifically, Quiah admitted that he "shot and killed Eric Reid in the Bronx" on August 21, 2011; that, at that time, the defendant "was a member of the Bloods"; that the defendant's criminal acts were done "[t]o maintain [his] status in the Bloods"; and that the defendant knew his conduct was unlawful. (Plea Tr. 11-12). Moreover, at his sentencing, Quiah made the following statements:

> Your Honor, I just want to say that I'm sorry. I know they said it would probably be inappropriate for me to address Eric Reid's family, but to them I'm sorry. Nothing about what happened was premeditated. And I can just say I'm sorry. I'm trying to make a change. I'm trying to change myself. I don't really know what I can say. What I did say, there is nothing I can say that can undo it, so all I can say is I'm sorry. That's it.

(Plea 24.). The defendant has not proffered any new or additional evidence undermining his prior statements under oath affirming his guilt, or otherwise establishing his actual innocence.

Because the defendant cannot show cause-and-prejudice or actual innocence, his "direct" claims are procedurally defaulted and must be denied.

### D.  Quiah's "Direct" Claims Lack Merit

Even if Quiah's "direct" claims regarding the sufficiency of the Indictment and jurisdiction of the Court were somehow not untimely and somehow not procedurally defaulted, those claims would fail on the merits for the same reasons that Quiah cannot show his counsel's performance was deficient. *See* Section III(B)(2)(a), *supra*.

## IV.   Conclusion

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney
Southern District of New York

by:  /s/ Micah F. Fergenson
     Micah F. Fergenson
     Assistant United States Attorney
     (212) 637-2190


cc:     Wade Quiah (By Certified Mail)