UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

WADE QUIAH,

Defendant.

**ORDER**

11 Cr. 739 (PGG)
20 Civ. 4000 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On December 20, 2013, Wade Quiah pled guilty before Magistrate Judge Francis to using, carrying, and possessing a firearm during and in relation to a crime of violence for which he may be prosecuted in federal court, and in furtherance of that crime to causing the death of Eric Reid, all in violation of 18 U.S.C. 924(j). (Plea Tr. (11 Cr. 739, Dkt. No. 33) at 4-13; Indictment (11 Cr. 739, Dkt. No. 2) (Count One)) In a November 13, 2014 order, this Court accepted Quiah's guilty plea. (Order (11 Cr. 739, Dkt. No. 43)) That same day, this Court sentenced Quiah to 235 months' imprisonment and five years' supervised release. (Sent. Tr. (11 Cr. 739, Dkt. No. 46) at 31-32; Judgment (11 Cr. 739, Dkt. No. 44) 2-3)

Quiah has filed two pro se petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1); June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52)) In his petitions, Quiah argues that the Indictment in this case is defective, and that as a result his Fourth Amendment, Fourteenth Amendment, and due process rights were violated. Quiah also asserts that he was denied effective assistance of counsel because his attorney did not challenge the sufficiency of the Indictment. (May

13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 5-6; June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2) Lastly, construed liberally, Quiah seeks relief under United States v. Davis, 588 U.S. 445 (2019). (June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2)

For the reasons stated below, Quiah's petitions will be denied.

## BACKGROUND

### I. FACTS

Quiah and Reid were members of a Bloods street gang known as the "East Homicide Brims." (See Sent. Tr. (11 Cr. 739, Dkt. No. 46) at 24; Presentence Investigation Report ("PSR") (11 Cr. 739, Dkt. No. 45) ¶ 16) On August 21, 2011, Quiah and other members of the East Homicide Brims attended a picnic at Rosewood Park in the Bronx. (Sent. Tr. (11 Cr. 739, Dkt. No. 46) at 24) At the picnic, Quiah and other gang members confronted Reid "about an allegation that he had cooperated with law enforcement officials in connection with a state murder case against another gang member." (Id. at 25)

> Members of the gang then assaulted Mr. Reid. Mr. Quiah then shot Mr. Reid multiple times with a nine[-]millimeter semiautomatic pistol. Mr. Reid, who was only 17 years old at the time, died of his wounds. State prosecutors later told the U.S. [A]ttorney's [O]ffice that Mr. Reid was not in fact a witness in the state murder case.
>
> According to the government, although Mr. Quiah possessed a firearm that day, he did not learn about the allegations against Mr. Reid until he arrived at the park. Mr. Quiah did not know ahead of time that Mr. Reid would attend the picnic or that [Reid] would be attacked because of suspicions that he was a police informant.

(Id.)

## II. PROCEDURAL HISTORY

On August 31, 2011, Quiah was charged with (1) using a firearm during and in relation to a crime of violence for which he may be prosecuted in federal court – namely, "the assault of another member of the defendant's gang" – that caused the death of a person, in violation of 18 U.S.C. § 924(j) (Indictment (11 Cr. 739, Dkt. No. 2) Count One); and (2) using a firearm during and in relation to a crime of violence for which he may be prosecuted in federal court – namely, "the assault of another member of the defendant's gang" – in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Id., Count Two)

On December 20, 2013, Quiah entered into a plea agreement with the Government providing that he would plead guilty to Count One of the Indictment. (Plea Agmt. at 1) In the plea agreement, the parties agreed that neither side would seek a departure from the "Stipulated Guidelines Range" of 235 to 293 months' imprisonment, but both sides reserved their right to seek a variance from that range. (Id. at 3) The plea agreement further provides that Quiah "will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 235 to 293 months' imprisonment. . . ." (Id. at 4)

As stated above, Quiah pled guilty to Count One before Magistrate Judge Francis on December 20, 2013 (Plea Tr. (11 Cr. 739, Dkt. No. 33) at 4-13; Indictment (11 Cr. 739, Dkt. No. 2) Count One), and this Court accepted Quiah's guilty plea on November 13, 2014. (Order (11 Cr. 739, Dkt. No. 43)) That same day, this Court sentenced Quiah to 235 months' imprisonment – the bottom of the Stipulated Guidelines

Range – and five years' supervised release. (Sent. Tr. (11 Cr. 739, Dkt. No. 46) at 31-32; Judgment (11 Cr. 739, Dkt. No. 44) at 2-3)

Judgment was entered on November 14, 2014. (Judgment (11 Cr. 739, Dkt. No. 44)) On May 5, 2020 – more than five years and five months later – Quiah mailed his notice of appeal from prison. (See Not. of Appeal (11 Cr. 739, Dkt. No. 49)) In an October 6, 2022 order, the Second Circuit dismissed Quiah's appeal as untimely. United States v. Quiah, No. 20-1632 (2d Cir. Oct. 6, 2022). The mandate issued on November 15, 2022. (See Mandate (11 Cr.739, Dkt. No. 55))

Because Quiah did not file a timely appeal, the judgment in this case became final on November 28, 2014 – fourteen days after it was entered. See Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of . . . the judgment or the order being appealed . . . ."); Ottenwarde v. United States, No. 12 Civ. 6537 (JGK), 2013 WL 1242632, at *4 (S.D.N.Y. Mar. 28, 2013) ("Because [the defendant] did not file a timely direct appeal, the judgment of conviction in this case became final fourteen days after its entry. . . .").

Quiah' first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is dated May 13, 2020. (May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 7) Quiah's second petition for habeas relief is dated June 8, 2020. (June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 3) Liberally construed, the petitions seek relief on the following four grounds:

First, Quiah argues that he received ineffective assistance of counsel because his attorney did not challenge the sufficiency of the Indictment. (May 13, 2020

Pet. (20 Civ. 4000, Dkt. No. 1) at 6) According to Quiah, the Indictment is defective because it charges a violation of 18 U.S.C. § 924(c), but does not allege the "predicate statute"[1] for the "crime of violence or drug trafficking [crime]" that is a necessary component of a Section 924(c) violation. (Id.) The Indictment instead refers to "assault" which – according to Quiah – is not a "federal crime." Construed liberally, Quiah's sufficiency challenge applies to both Counts One and Two.[2]

Second, Quiah argues that – because the Indictment is defective – this Court lacks jurisdiction to hear his case. (Id.)

Third, Quiah argues that – because the Indictment is defective – his Fourth Amendment, Fourteenth Amendment, and due process rights were violated. (Id.; June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2)

Lastly, Quiah seeks unspecified relief under "Davis v. United States of America." (June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2) The Court understands Quiah to be referencing United States v. Davis, 588 U.S. 445 (2019). In Davis, the Supreme Court held that the "residual clause" of 18 U.S.C. § 924(c) – which defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of

---

[1] In a letter filed on June 15, 2021, Quiah asks the Court to "strike all language [in his petitions] utilizing [the term] 'underlying crime' and replace [that term] with 'predicate statute.'" (June 15, 2021 Ltr. (20 Civ. 4000, Dkt. No. 15)) In a June 20, 2021 order, this Court granted that application "to the extent that this Court will construe 'underlying crime,' as used in Quiah's papers, to mean 'predicate statute.'" (Mem. Endors. (20 Civ. 4000, Dkt. No. 17))

[2] Although Count One charges a violation of 18 U.S.C. § 924(j), that statute applies to "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm." Section 924(j) thus incorporates by reference Section 924(c). Count Two is explicitly premised on a violation of Section 924(c).

committing the offense" – is unconstitutionally vague. Davis, 588 U.S. at 470 (citing 18 U.S.C. § 924(c)(3)(B)).

The Government contends that Quiah's petitions fail as untimely, given that they were both filed many years after Section 2255's one-year statute of limitations had expired. (Govt. Opp. (20 Civ. 4000, Dkt. No. 5) at 4-5 (citing 28 U.S.C. § 2255(f)) The Government also argues that the petitions should be denied even if considered on the merits. As to Quiah's ineffective assistance of counsel claim, the Government argues that, "even assuming it were not untimely, Quiah cannot satisfy either prong of the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984)." The Government further argues that "any non-ineffective-assistance claim (or 'direct' claim) has been procedurally defaulted," and "even assuming any 'direct' claim were not untimely and not procedurally defaulted, it fails on the merits." (Id. at 4)[3]

On March 10, 2022, Quiah submitted a motion for summary judgment "in petitioner's favor granting [his Section] 2255 motion." (20 Civ. 4000, Dkt. No. 25)

On May 23, 2024, Quiah submitted a "[m]otion requesting relief from stay" in response to the Government's request for a stay pending the Second Circuit's decision in Morris. (20 Civ. 4000, Dkt. No. 30)

---

[3] The Government requests that – to the extent Quiah seeks relief under United States v. Davis, 588 U.S. 445, (2019), the Court stay his petition until the Second Circuit renders its decision in United States v. Morris, No. 16-0006-cr (2d. Cir). (Id. at 3 n.2) The Second Circuit issued its decision in Morris on March 7, 2023. See United States v. Morris, 61 F.4th 311 (2d Cir. 2023).

## DISCUSSION

## I. LEGAL STANDARD

Section 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Accordingly, under Section 2255, "a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

A district court need not hold an evidentiary hearing concerning a Section 2255 petition where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "To warrant a hearing, the movant 'must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief.'" Mann v. United States, 16 Civ. 7556 (KPF), 2016 WL 5900174, at *7 (S.D.N.Y. Oct. 11, 2016) (quoting Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013)). However, "[a] court need not . . . credit [a petitioner's] factual assertions [where they are] contradicted by evidence in the record of the underlying proceeding," and where the judge responsible for "the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." Id. (internal quotation marks and citations omitted).

"Motions under Section 2255 are subject to a one-year statute of limitations that runs from" one of four "possible dates." Nunez v. United States, 954 F.3d 465, 469 (2d Cir. 2020); see 28 U.S.C. § 2255(f)(1)-(4). Here, since Quiah "has not argued that any of the other three dates are applicable – and the Court does not find them to be – the only relevant date that triggers the running of the clock . . . is 'the date on which the judgment of conviction becomes final.'" United States v. Jude, No. 15 CR. 355 (JFK), 2019 WL 3500284, at *6 (S.D.N.Y. Aug. 1, 2019) (quoting 28 U.S.C. § 2255(f)(1)); see also Mattera v. United States, No. 12-CR-127 (RJS), 2020 WL 774103, at *2 (S.D.N.Y. Feb. 18, 2020) ("Generally, the statute of limitations runs from the date on which the judgment of conviction becomes final.").

As discussed above, Quiah's judgment became final on November 28, 2014.

## II. ANALYSIS

### A. Statute of Limitations

Because Quiah's judgment became final on November 28, 2014, and he did not submit his initial habeas petition until May 13, 2020 – more than five years and five months later (Judgment (11 Cr. 739, Dkt. No. 44); May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1)), he is barred from seeking relief under Section 2255. See Acosta v. United States, 12 Cr. 224 (PGG), 17 Civ. 915 (PGG), 2020 WL 2115067, at *4 (S.D.N.Y. May 2, 2020) (citing King v. United States, No. 10-CR-122 (JGK), 2017 WL 1483337, at *10 (S.D.N.Y. Apr. 25, 2017) ("The petitioner filed the Petition . . . over one year after the applicable one-year limitations period had ended. . . . Therefore, the Petition is time-barred under Section 2255."); Perez v. United States, No. 04 CR. 937-1 NRB, 2015 WL

3413596, at *3 (S.D.N.Y. May 28, 2015) ("Perez's judgment of conviction . . . became final . . . on December 28, 2009. . . . Perez's petition, which he mailed from prison on January 24, 2014, came more than three years too late.")). Accordingly, Quiah's habeas petitions will be dismiss as time-barred.[4]

### B. Jurisdictional Challenge

Quiah contends that this Court has no jurisdiction because the Indictment does not provide a statutory citation for the "crime of violence" alleged in Counts One and Two. (May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 6)

#### 1. Applicable Law

"Federal courts, as courts of limited jurisdiction, have subject matter jurisdiction only where Congress has conferred such jurisdiction on them." United States v. Balde, 943 F.3d 73, 88 (2d Cir. 2019). In the context of federal criminal prosecutions, "[j]urisdiction is vested in the federal courts when a proper indictment is filed: '[i]f the indictment alleges an offense under U.S. criminal statutes, the courts of the United States have jurisdiction to adjudicate the claim.'" Id. at 88-89 (quoting United States v. Prado, 933 F.3d 121, 134 (2d Cir. 2019)). "'If the facts [alleged in an indictment] fail to show a violation, the court enters judgment for the defendant. It does not dismiss the case for lack of jurisdiction, leaving the case unadjudicated.'" Id. (quoting Prado, 933 F.3d at 134) (citing United States v. Yousef, 750 F.3d 254, 260 (2d Cir. 2014) ("Even a

---

[4] "Although Section 2255 petitioners may overcome the statute of limitations bar where they assert a basis for equitable tolling or make a credible showing of actual innocence, [Quiah] has invoked neither exception, and this Court sees no basis for their application." Acosta, 2020 WL 2115067, at *4 n.5 (citing United States v. Flower, No. 5:14-CR-108-GWC-1, 2019 WL 5957883, at *5 (D. Vt. May 23, 2019) ("Given that [petitioner's Section 2255 petition] is barred by the statute of limitations . . . , to obtain relief she must establish that she is either actually innocent of her conviction or that she is entitled to equitable tolling of the statute of limitations.")).

defendant's persuasive argument that the conduct set out in the indictment does not make out a violation of the charged statute does not implicate subject-matter jurisdiction.").

Accordingly, "[a] jurisdictional argument – i.e. one that would survive waiver by a valid guilty plea – is one where a defendant demonstrates that the 'face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense.'" Id. at 89 (quoting Yousef, 750 F.3d at 259) (emphasis in Balde); see also United States v. Kumar, 617 F.3d 612, 620 (2d Cir. 2010) ("To challenge the court's jurisdiction, 'the defendant who has pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense.'" (quoting Hayle v. United States, 815 F.2d 879, 881 (2d Cir. 1987))).

**2. Analysis**

Quiah pled guilty to Count One of the Indictment, which charges him with violating 18 U.S.C. § 924(j).[5] (Indictment (11 Cr. 739, Dkt. No. 2) ¶ 1) A violation of Section 924(j) occurs when "[a] person . . . , in the course of a violation of [18 U.S.C. § 924(c)], causes the death of a person through the use of a firearm," and that "killing is a murder (as defined in section 1111)." A violation of Section 924(c) takes place when a

> person . . . , during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or . . . , in furtherance of any such crime, possesses a firearm. . . .

18 U.S.C. § 924(c)(1)(A).

Here, Count One charges Quiah as follows:

---

[5] Given that Quiah did not plead guilty to Count Two, he cannot raise a jurisdictional challenge as to that charge. See Balde, 943 F.3d at 89 (explaining that "[a] jurisdictional argument" concerns "the count or counts to which [the defendant] pleaded guilty") (emphasis in original).

> On or about August 21, 2011, in the Southern District of New York, WADE QUIAH, a/k/a "Wade Brevard," a/k/a "Baby Boy," the defendant, willfully and knowingly, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the assault of another member of the defendant's gang, Eric Reid, a/k/a "Hood," did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, and in the course thereof did cause the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a), to wit, QUIAH shot and killed Reid in the vicinity of Rosewood Street and Bronx Boulevard, Bronx, New York, in the course of enforcing gang discipline.
>
> (Title 18, United States Code, Sections 924(j) and 2.)

(Indictment (11 Cr. 739, Dkt. No. 2) ¶ 1)

Count One plainly charges a federal offense – namely, a violation of Section 924(j). Count One tracks the language of Section 924(j) and Section 924(c), which is incorporated by reference in Section 924(j). As the Second Circuit has remarked, "it is difficult to understand how an indictment that tracks the exact language of the statute, and that expressly charges that the defendant violated it, fails on its face to charge that the defendant committed a federal crime." Balde, 943 F.3d at 90 (emphasis omitted). Because the language used in Count One is sufficient to allege a violation of Section 924(j), this Court properly exercised jurisdiction over Quiah's case.

The absence of a statutory citation for the "crime of violence" underlying the Section 924(j) offense does not alter this conclusion. According to Federal Rule of Criminal Procedure 7(c)(2), "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Quiah does not argue that he was misled as to what "crime of violence" was charged in Count One. Moreover, in United States v. Rivera, 679 F. App'x 51 (2d Cir. 2017) (summary order), the Second Circuit

found "no error in the indictment's citation to § 924(j) alone," "because § 924(j) expressly incorporates § 924(c) by reference, and the indictment pleaded each of the elements of the crime reflected in these two statutory sections." Rivera, 679 F. App'x at 54.

In any event and as discussed above, "[e]ven a defendant's persuasive argument that the conduct set out in the indictment does not make out a violation of the charged statute does not implicate subject-matter jurisdiction." Yousef, 750 F.3d at 260; see also United States v. Aquart, 92 F.4th 77, 90 (2d Cir. 2024) ("[W]hether alleged conduct constitutes the charged offense is a non-jurisdictional question.").

In sum, Quiah has not shown that Count One – the charge to which he pled guilty – "failed to charge a federal offense." Accordingly, his petitions will be dismissed to the extent they are premised on an alleged lack of subject matter jurisdiction.

### C. Waiver

#### 1. Waiver of Non-Jurisdictional Issues

Quiah argues that – because the Indictment is defective – his Fourth Amendment, Fourteenth Amendment, and due process rights have been violated. (May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 5-6; June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2) The Government responds that, "by pleading guilty, Quiah waived all non-jurisdictional challenges to the Indictment." (Govt. Opp. (20 Civ. 4000, Dkt. No. 5) at 10)

**a. Whether Quiah Entered a Knowing and Voluntary Guilty Plea**

"A 'defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.'" United States v. Bastian, 770 F.3d 212, 217 (2d Cir. 2014) (quoting United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003)); see also Kumar, 617 F.3d at 620 ("A plea of guilty 'waive[s] any and all non-jurisdictional defects in the indictment.'" (quoting United States v. Moloney, 287 F.3d 236, 239 (2d Cir. 2002))). "Before [a court] consider[s] a defendant's non-jurisdictional objections waived, however], [the court] must conclude that the defendant 'entered a valid plea' under Fed. R. Crim. P. 11." Bastian, 770 F.3d at 217 (quoting United States v. Calderon, 243 F.3d 587, 589 (2d Cir. 2001)).

**b. Analysis**

As discussed above, Quiah pled guilty to Count One of the Indictment before a magistrate judge. On November 13, 2014, after reviewing the transcript of Quiah's plea allocution, this Court "determined that [Quiah] entered the guilty plea knowingly and voluntarily and that there was a factual basis for the guilty plea." (Order (11 Cr. 739, Dkt. No. 43))

During his plea allocution, Quiah confirmed that he understood, inter alia, the following:

> each of the rights listed in Fed. R. Crim. P. 11 (Plea Tr. (11 Cr. 739, Dkt. No. 33) at 5-8);
>
> the terms of his plea agreement (id. at 8);
>
> the maximum penalties he faced as a consequence of his guilty plea, including a possible term of life imprisonment (id. at 4); and

that if he received a sentence "within or below the guideline range indicated," that he could not "appeal or otherwise challenge [his] sentence."[6] (Id. at 8-9)

Quiah also stated that he was satisfied with his attorney, that no threats or promises had been made to him to influence his guilty plea, and that his plea was "voluntary [and] made of [his] own free will." (Id. at 4, 8, 11) Quiah does not now argue that his decision to enter into his plea agreement was coerced, nor does he argue that he did not understand the plea agreement's waiver provisions.

Quiah has not offered any reason as to why the Court should revisit its determination that he "entered the guilty plea knowingly and voluntarily and that there was a factual basis for the guilty plea." (Order (11 Cr. 739, Dkt. No. 43)) See United States v. Rivernider, 828 F.3d 91, 105 (2d Cir. 2016) ("[S]worn testimony given during a plea colloquy 'carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" (quoting United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001))).

**2. Quiah Waived His Right to Collaterally Attack His Sentence**

In addition to waiving his non-jurisdictional challenges to his sentence, Quiah waived his right to collaterally attack his sentence pursuant to Section 2255.

---

[6] Quiah's plea agreement set forth a "Stipulated Guidelines Range" of 235 to 293 months' imprisonment. (Plea Agmt. at 3) This Court sentenced Quiah to 235 months' imprisonment – the bottom of the applicable range. (Judgment (11 Cr. 739, Dkt. No. 44) at 2)

**a. Applicable Law**

"A waiver of the right to collaterally attack a conviction is presumptively enforceable." Cook v. United States, 84 F.4th 118, 122 (2d Cir. 2023) (citing United States v. Burden, 860 F.3d 45, 51 (2d Cir. 2017)).

> Courts "will not enforce" a "plea agreement's collateral-attack waiver" in "only five circumstances": "(1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence; and (5) where the waiver was unsupported by consideration."

United States v. Alldredge, 23 Cr. 537 (JPC), 25 Civ. 1261 (JPC), 2025 WL 2910516, at *5 (S.D.N.Y. Oct. 14, 2025) (quoting Cook, 84 F.4th at 121-22).

"A defendant's waiver of his right to file a Section 2255 petition is knowing and voluntary where the defendant 'fully understood the consequences of the waiver,' and his decision was not 'the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" Reyes v. United States, No. 05 Civ. 3924 (KMW), 2009 WL 928284, at *2 (S.D.N.Y. Mar. 27, 2009) (quoting United States v. Rogue, 421 F.3d 118, 122 (2d Cir. 2005) (internal quotation marks and citations omitted)).

**b. Analysis**

Quiah does not argue that his waiver of his right to collaterally attack his sentence was not knowing and voluntary; that his sentence was based on constitutionally impermissible factors; that the Government breached his plea agreement; that this Court did not give a rationale for his sentence; or that his waiver was not supported by

consideration.[7] The Court finds that Quiah was explicitly advised (1) in the plea agreement that – in the event that he received a sentence within the Stipulated Guidelines Range – he would have no right either to file a direct appeal concerning that sentence or to collaterally attack his sentence under 28 U.S.C. § 2255 (Plea Agmt. at 4); and (2) by the magistrate judge, during the Rule 11 proceeding, of this waiver provision. (Plea Tr. (11 Cr. 739, Dkt. No. 33) at 8-9) Given these circumstances, the Court concludes that Quiah knowingly and voluntarily waived his right to collaterally attack his sentence pursuant to Section 2255. See Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001) (per curiam) (finding "no error in the District Court's determination that [defendant's] plea agreement was entered into knowingly and voluntarily, and with awareness of his waiver of appeal and collateral attack," where "(1) petitioner signed the plea agreement, (2) he stated to the magistrate judge that he had read and understood the plea agreement, (3) [he] did not attempt to appeal his sentence, even though he had been told by the sentencing judge that he had the right to appeal, (4) he did not claim, in his § 2255 motion, that he had not understood the waiver contained in his plea agreement, and (5) even in his petition for reconsideration, he did not assert explicitly or under oath that at the time of his plea he did not understand that he was giving up his right to appeal and petition under § 2255").

* * * *

[7] Under the November 1, 2014 Sentencing Guidelines – absent the plea agreement and his guilty plea – Quiah's offense level was 40. In Criminal History Category II, Quiah faced a Sentencing Guidelines range of 324 to 405 months' imprisonment. (PSR (11 Cr. 739, Dkt. No. 45) ¶ 65); see Nov. 1, 2014 United States Sentencing Guidelines ("U.S.S.G.") Ch. 5 Pt. A (Sentencing Table). As a result of the plea agreement and his guilty plea, Quiah faced a Sentencing Guidelines range of 235 to 293 months' imprisonment. (PSR (11 Cr. 739, Dkt. No. 45) at 16)

The inquiry concerning the validity of a waiver does not end here, however. "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured. . . ." Brown v. United States, 637 F. Supp. 2d 212, 217 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). For example, "an appeal waiver tainted by ineffective assistance is not enforceable." Hunter v. United States, 608 U.S. 713, 724 (2026); see also United States v. Peterson, 896 F. Supp. 2d 305, 311 (S.D.N.Y. 2012) ("[W]aivers secured without the effective assistance of counsel may be unenforceable."). The Court considers below Quiah's argument that he did not receive effective assistance of counsel.

**D. Ineffective Assistance of Counsel**

**1. Applicable Law**

The Supreme Court has established a two-part test for habeas petitions premised on ineffective assistance of counsel:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).[8] A claim for habeas relief "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011).

"A criminal defendant has a high burden to overcome to prove the deficiency of his counsel," Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006), because

[8] As discussed below, in the context of a guilty plea, a petitioner is obligated to show that the "result of the proceeding would have been different." (Id. at 694)

"[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Indeed, in performing the first prong of the Strickland analysis, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" as "[t]here are countless ways to provide effective assistance in any given case." Id. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Id. at 690.

Under the second prong of the Strickland test, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In applying this standard, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**2. Analysis**

Quiah argues that he was denied effective assistance of counsel because his attorney did not challenge the sufficiency of the Indictment. (May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 6; June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2)

"The Supreme Court has held that an indictment is sufficient if it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend' and (2) 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Benjamin, 95 F.4th 60, 66 (2d Cir. 2024) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). "'An indictment . . . need not be perfect, [however,] and common sense and reason are more important than technicalities.'" Id. (quoting United States v. De La Pava, 268 F.3d 157, 162 (2d Cir. 2001)). "Therefore, 'an indictment need do little more

than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" Id. at 66-67 (quoting United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998)).

As discussed above, Count One of the Indictment tracks the language of the statute charged – 18 U.S.C. § 924(j) – and states the time and place of the alleged crime – August 21, 2011, in the vicinity of Rosewood Street and Bronx Boulevard in the Bronx. (Indictment (11 Cr. 739, Dkt. No. 2) ¶ 1) Count One also tracks the language of 18 U.S.C. § 924(c), which is incorporated by reference in Section 924(j). As to the predicate "crime of violence" for the Section 924(j) charge, Count One states that it is Quiah's "assault of another member of the defendant's gang, Eric Reid, a/k/a "Hood." (Id.)

Count Two similarly tracks the language of the charged statute – Section 924(c) – and states the time and place of the alleged crime – August 21, 2011, in the vicinity of Rosewood Street and Bronx Boulevard in the Bronx.[9] Count Two alleges the

---

[9] Count Two charges Quiah with violating 18 U.S.C. § 924(c)(1)(A)(iii) as follows:

> On or about August 21, 2011, in the Southern District of New York, [Quiah], during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the assault of another member of the defendant's gang, Eric Reid, a/k/a "Hood," knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, to wit, a nine-millimeter semi-automatic pistol, which QUIAH discharged at Reid in the vicinity of Rosewood Street and Bronx Boulevard, Bronx, New York.

(Indictment (11 Cr. 739, Dkt. No. 2) ¶ 2) Although Quiah did not plead guilty to Count Two, the Court understands him to be contending that his lawyer provided ineffective assistance in not challenging both Counts One and Two ab initio. (See May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 6; June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2)

same predicate "crime of violence" that is charged in Count One – namely, Quiah's "assault of another member of the defendant's gang, Eric Reid, a/k/a "Hood." (Id.) Quiah has made no showing suggesting that the language of either Count One or Count Two is legally insufficient. See United States v. Avenatti, 432 F.Supp.3d 354, 361 (S.D.N.Y. 2020) ("Because Count Three tracks the language of 18 U.S.C. §§ 1343 and 1346, apprises Avenatti of the nature of the accusation against him, and – when read in conjunction with the 'Overview' section of the Indictment, which Count Three incorporates by reference – provides notice generally of where and when the crime occurred, Count Three is legally sufficient.").

Quiah complains, however, that the "indictment doesn't charge an underlying [predicate statute]." (May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 6; Mem. Endors. (20 Civ. 4000, Dkt. No. 17) (stating that the Court will construe all references in Quiah's petitions to "underlying crime" as referring instead to "predicate statute")) Quiah thus argues that the Government was required to provide in the Indictment a statutory citation for the predicate "crime of violence" it was alleging in Counts One and Two.

The Government responds that "[b]oth counts of the Indictment" sufficiently "identified the underlying crime of violence as 'the assault of another member of the defendant's gang, Eric Reid,'" which constitutes "a violation of 18 U.S.C. § 1959(a)(3), the [violent crimes in aid of racketeering] assault provision." (Govt. Opp. (20 Civ. 4000, Dkt. No. 5) at 9)

18 U.S.C. § 1959(a)(3) provides that

> [w]hoever, . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity,

> . . . assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished. . . .

18 U.S.C. § 1959(a)(3).

This Court concludes that – by alleging that Quiah "assault[ed] . . . another member of the defendant's gang, Eric Reid, a/k/a "Hood," and "shot and killed Reid . . . in the course of enforcing gang discipline" – the Indictment fairly informed Quiah of the "crime of violence" alleged in Counts One and Two.[10] See Benjamin, 95 F.4th at 66-67, 73-74 (finding that indictment sufficiently alleged a quid pro quo in violation of 18 U.S.C. § 1346, even though it did not use the language "quid pro quo agreement"; the indictment alleged that defendant lieutenant governor participated in a "scheme to obtain campaign contributions from a real estate developer . . . in exchange for" defendant's agreement to use his official authority and influence to obtain a grant of state funds) (emphasis in original); United States v. Vilar, 729 F.3d 62, 80-81 (2d Cir. 2013) (indictment sufficiently alleged investment advisor fraud in violation of 15 U.S.C. §§ 80b-6 and 80b-7, even though "it did not specify that the [Small Business Investment Company] fraud, as opposed to the [Guaranteed Fixed Rate Deposit Accounts] fraud" was the basis for the charge, because indictment "set[] out the time and circumstances of the conspiracy and track[ed] the language of the statute charged").[11]

---

[10] During his plea allocution, Quiah admitted the elements of the violent crimes in aid of racketeering assault provision, 18 U.S.C. § 1959(a)(3). (Plea Tr. (11 Cr. 739, Dkt. No. 33) at 10-11) To the extent that Quiah argues that a violation of Section 1959(a)(3) does not constitute a "crime of violence" for purposes of a Section 924(j) or Section 924(c) charge, the Court addresses that issue in connection with Quiah's Davis claim.

[11] To the extent Quiah contends that the "crime of violence" alleged in the Indictment should have been charged in a separate count (see May 13, 2020 Pet. (20 Civ. 4000, Dkt.

As discussed above, Counts One and Two track the language of the statutes charged – Section 924(j) and Section 924(c), respectively – and state the time and place of the alleged crime. See Benjamin, 95 F.4th at 67. Because the Indictment "apprise[s] [Quiah] of its contentions as to the time, place, and nature of the alleged criminal conduct," United States v. Adams, 760 F.Supp.3d 6, 27 (S.D.N.Y. 2024) (citing United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000)), it "[was] sufficiently specific to permit [Quiah] to prepare [his] defense and to bar future prosecutions for the same offense . . . [and] [was] therefore valid on its face." Alfonso, 143 F.3d at 776 (2d Cir. 1998).

Because the Indictment was not insufficient, defense counsel's decision not to challenge the sufficiency of the Indictment falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, because the Indictment was not insufficient, Quiah cannot show that "the result of the proceeding

---

No. 1) at 5-6), the Second Circuit has rejected that argument. "The plain language of § 924(c) requires only that the predicate crime of violence (or drug trafficking) have been committed; the wording does not suggest that the defendant must be separately charged with that predicate crime and be convicted of it." Johnson v. United States, 779 F.3d 125, 129-30 (2d Cir. 2015).

To the extent that Quiah argues that Count One is "multiplicitous" – because "general assault isn['t] a federal crime [and] to charge the two in the same count would be multiplicitous" (see May 13, 2020 Pet. (20 Civ. 4000, Dkt. No. 1) at 6) – that argument is not persuasive. "An indictment is multiplicitous when a single offense is alleged in more than one count." United States v. Fiore, 821 F.2d 127, (2d Cir. 1987). But the fact that Count One requires proof of the Section 924(c) offense charged in Count Two does not render the Indictment defective. And the fact that the offenses charged in Counts One and Two require proof of a predicate crime of violence does not make these counts multiplicitous. See United States v. Ivanova, 11 Cr. 614, 2014 WL 11510255, at *3 ("[A]n indictment is not multiplicitous merely because the same facts underlie multiple charges in the same indictment."). Moreover, the underlying crime of violence is not "general assault," but instead a violent crime in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3).

would have been different" had his attorney challenged the sufficiency of the Indictment. Id. at 694. Accordingly, Quiah was not denied effective assistance of counsel, and his waivers of appellate and Section 2255 review are enforceable.

### D. Claim for Relief Under *United States v. Davis*

In his second habeas petition, Quiah seeks relief under United States v. Davis.[12] In Davis, the Supreme Court found the "residual clause" of 18 U.S.C. § 924(c) – which defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" – unconstitutionally vague. See Davis, 588 U.S. at 470; 18 U.S.C. § 924(c)(3)(B). Construing Quiah's claims liberally, he contends that his conviction under Count One must be vacated because Count One does not charge a "crime of violence" as defined in Section 924(c)(3)(A), and therefore cannot support a conviction under Section 924(j).

#### a. Applicable Law

As discussed above, 18 U.S.C. § 924(j) incorporates by reference 18 U.S.C. § 924(c). See 18 U.S.C. § 924(j). "A defendant can be convicted under 18 U.S.C. § 924(c) only if 'during and in relation to any crime of violence or drug trafficking crime' he 'use[d] or carrie[d] a firearm, or . . . , in furtherance of any such crime, possesse[d] a firearm.'" United States v. Morris, 61 F.4th 311, 316 (2d Cir. 2023) (quoting 18 U.S.C. § 924(c)(1)(A)) (emphasis added in Morris).

"'Crime of violence' is defined in two subparts: the elements clause, § 924(c)(3)(A), and the residual clause, § 924(c)(3)(B)." Davis, 588 U.S. at 445. The

[12] Quiah states that he "didn[']t file Davis issue but if I can add it I wish to." (June 8, 2020 Pet. (11 Cr. 739, Dkt. No. 52) at 2)

elements clause defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). "The residual clause . . . defines a 'crime of violence' as a felony 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" Davis, 588 U.S. at 445 (quoting 18 U.S.C. § 924(c)(3)(B)). "The Supreme Court has held that the residual clause is unconstitutionally vague." Morris, 61 F.4th at 316 (citing Davis, 588 U.S. at 470). Accordingly, Quiah's conviction on the Section 924(j) charge – which incorporates Section 924(c) by reference – can only be sustained if it is predicated on a "crime of violence" defined in the elements clause. See Morris, 61 F.4th at 316 (citing 18 U.S.C. § 924(c)(3)(A)).

"To determine whether an offense is a crime of violence" under the elements clause of Section 924(c), courts have employed two approaches: the "categorical approach," and the "modified categorical approach." See United States v. Pastore, 83 F.4th 113, 118 (2d Cir. 2023).

Courts employ the categorical approach where a statute proscribes only a single crime, the elements of which are not divisible. (See id. at 118-19) Under the categorial approach, a court "do[es] not consider the particular facts before [it]; rather, [the court] 'identif[ies] the minimum criminal conduct necessary for conviction under a particular statute' by 'look[ing] only to the statutory definitions – i.e., the elements – of [the] offense.'" Id. (quoting United States v. Hill, 890 F.3d 51, 55 (2d Cir. 2018) (internal quotation marks omitted)). The court "then evaluate[s] whether this minimum

conduct falls within the definition of 'a crime of violence under [Section] 924(c)(3)(A).'" Id. (quoting Hill, 890 F.3d at 56).

Courts apply the modified categorical approach where a statute is "divisible," such that it "list[s] elements in the alternative, and thereby define[s] multiple crimes." Id. (quoting Mathis v. United States, 579 U.S. 500, 505 (2016)). "Under the modified categorical approach, [courts] may review '"a limited class of documents" from the record of conviction[ – such as the indictment and plea agreement – ]to "determine what crime, with what elements, a defendant was convicted of."'" Id. at 118-19 (quoting Gray v. United States, 980 F.3d 264, 266 (2d Cir. 2020) (quoting Mathis, 579 U.S. at 505)) (citing United States v. Moore, 916 F.3d 231, 238 (2d Cir. 2019) (explaining that courts may consult "the indictment, jury instructions, or plea agreement and colloquy to determine which of [the] [] alternative offenses was the offense of conviction" (internal quotation marks omitted))). Courts "then return to the categorical analysis and compare the elements of the offense of conviction with section 924(c)(3)(A)'s definition of a crime of violence." Id. at 119 (internal quotation marks and citation omitted).

**b. Analysis**

As discussed above, Quiah appears to contend that his Section 924(j) conviction under Count One must be vacated because Count One does not charge a "crime of violence" as defined in Section 924(c)(3)(A), and therefore cannot support a conviction under Section 924(j).

According to the Government, the predicate crime of violence for Count One is "'the assault of another member of the defendant's gang, Eric Reid,'" which constitutes a violation of 18 U.S.C. § 1959(a)(3), the violent crimes in aid of racketeering

assault provision. (Govt. Opp. (20 Civ. 4000, Dkt. No. 5) at 9 (quoting Indictment (11 Cr. 739, Dkt. No. 2) ¶ 1)) During Quiah's Rule 11 proceeding, the Government represented that the elements of this offense are as follows:

> In this case, the crime of violence alleged is assault in aid of racketeering and attempted murder in aid of racketeering. That in turn is a charge under Title 18 United States Code Section 1959 which has three elements: First, that there existed an enterprise engaged in racketeering activity. In this case, the government alleges that the defendant was a member of the East Homicide Brims set of the Bloods street gang and that that was an enterprise as defined under the statute; second, that the defendant committed the crime alleged, that is assault with a dangerous weapon, assault resulting in serious bodily injury and attempting or conspiring to commit murder; and third, that the defendant committed that crime for the purpose of gaining entrance to, increasing his position in, or maintaining his position in the enterprise.[13]

(Plea Tr. (11 Cr. 739, Dkt. No. 33) at 10)

Quiah then acknowledged that he understood that if he "were to go to trial the government would have to prove those elements beyond a reasonable doubt." (Id. at 11) See Morris, 61 F.4th at 318-19 (citing Shepard v. United States, 544 U.S. 13, 26 (2005) (in assessing whether a defendant's guilty plea supported a conviction for the crime charged, courts may consider the "transcript of [the] colloquy between [the] judge and defendant in which the factual basis for the plea was confirmed by the defendant.")).

The issue then, is whether the gang assault charged in Count One constitutes a "crime of violence" within the meaning of Section 924(c).

---

[13] During the plea hearing, the Government set forth the elements for a violation of 18 U.S.C. § 1959(a)(3) ("assault with a dangerous weapon or assault resulting in serious bodily injury"), as well as § 1959(a)(5) ("attempting or conspiring to commit murder"). In its opposition brief, however, the Government states that Counts One and Two are predicated on a violation of § 1959(a)(3). Accordingly, the Court addresses the violent crimes in aid of racketeering assault provision, § 1959(a)(3), and not the violent crimes in aid of racketeering provision premised on "attempting or conspiring to commit murder," § 1959(a)(5).

Because the violent crimes in aid of racketeering statute defines multiple crimes – including assault with a dangerous weapon committed in aid of racketeering and assault resulting in serious bodily injury committed in aid of racketeering – the statute is "divisible." See Pastore, 83 F.4th at 118; 18 U.S.C. 1959(a)(3). Accordingly, the modified categorical approach must be utilized here. See Morris, 61 F.4th at 317-18 (citing 18 U.S.C. § 1959(a)(3)).

Under the modified categorical approach, the Court must first determine "which specific [violent crime in aid of racketeering] assault offense is the predicate crime of violence underlying [Quiah's Count One] conviction." See id. at 318. Count One charges Quiah with "the assault of another member of the defendant's gang" that "cause[d] the death of [that] person through the use of a firearm." Because Quiah pled guilty to and allocuted to that conduct, the Court concludes that Count One is predicated on both assault with a dangerous weapon and assault which resulted in serious bodily injury.

Second, this Court must determine which "laws of any State or the United States" Quiah violated during the violent crimes in aid of racketeering assault that he committed. See id. at 319 (violent crime in aid of racketeering "[a]ssault [with a dangerous weapon] could itself be predicated on any number of federal or state crimes.") (emphasis in original). During his plea allocution, Quiah stated that "[o]n August 21, 2011[,] [he] shot and killed Eric Reid in the Bronx"; "[a]t the time of the crime [Quiah] was a member of the Bloods"; and that Quiah did so "[t]o maintain [his] status in the Bloods." (Plea Tr. (11 Cr. 739, Dkt. No. 33) at 11)

As to assault resulting in serious bodily injury, the Court finds that Quiah's conduct satisfies the elements of N.Y. Penal Law § 120.05(1). N.Y. Penal Law § 120.05(1) "requires that a defendant (1) cause a serious physical injury to another (2) with the intent to do so." Thompson v. Garland, 994 F.3d 109, 111 (2d Cir. 2021). Here, Quiah intentionally caused serious bodily injury: he shot and killed Reid for the purpose of maintaining his status in the Bloods. Accordingly, Quiah violated N.Y. Penal Law § 120.05(1) in shooting and killing Reid.

As to assault with a dangerous weapon, in Morris the Second Circuit relied on similar facts[14] to

> conclude that [the defendant's] assault violated at least N.Y. Penal Law § 120.05(2) ("A person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."), and perhaps also N.Y. Penal Law § 120.10(1) ("A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."), even though the latter requires an intent to cause "serious physical injury" that was not charged in this case.

Morris, 61 F.4th at 319. Accordingly, this Court finds that Quiah violated both N.Y. Penal Law § 120.05(2) and N.Y. Penal Law § 120.10(1).

"[T]he third and final step [of the modified categorial approach] is to determine whether" the assault at issue here – the Section 1959(a)(3) assault resulting in serious bodily injury premised on a violation of N.Y. Penal Law § 120.05(1), as well as the Section 1959(a)(3) assault with a dangerous weapon premised on a violation of N.Y.

---

[14] Citing Morris's plea allocution, the Second Circuit found that he had "admitted to having 'possessed a firearm for the purpose of assaulting Jordan Jones'; 'agree[ing] to shoot Jordan to maintain [his] standing in a group of individuals who had committed crimes together'; and 'sh[ooting] Jordan Jones on July 6, 2009,' after which Jones died." Id. at 319 (citing Shepard, 544 U.S. at 26).

Penal Law §§ 120.05(2) and 120.10(1) – "is a 'crime of violence' under § 924(c)'s elements clause." See Morris, 61 F.4th at 319.

N.Y. Penal Law § 120.05(1) assault resulting in serious bodily injury is a "crime of violence" for purposes of Section 924(c)'s elements clause. See United States v. Medunjanin, 10-cr-0019 (BMC), 19-cv-2371 (BMC), 20-cv-2755 (BMC), 2020 WL 5912323, at *5 (E.D.N.Y. Oct. 6, 2020) ("Assault under N.Y. Penal Law § 120.05(1) is categorically a crime of violence under § 924(c)'s elements clause."); United States v. Amador-Rios, 18-CR-398 (RPK), 2023 WL 2383273, at *3 (E.D.N.Y. Mar. 6, 2023) ("assault under Sections 120.05(1) and (2) of the New York Penal Law is a crime of violence" within the meaning of Section 924(c)) (citing Thompson, 994 F.3d at 111 ("a conviction under NYPL § 120.05(1) is a crime of violence as defined in 18 U.S.C. § 16(a)"); United States v. Scott, 990 F.3d 94, 110 (2d Cir. 2021) ("crimes intentionally causing physical injury are categorically violent even if committed by omission")).

Likewise, N.Y. Penal Law §§ 120.05(2) and 120.10(1) assault with a dangerous weapon constitutes a "crime of violence" for purposes of Section 924(c)'s elements clause. See Morris, 61 F.4th at 319.

In sum, the gang assault referenced in Count One constitutes a violent crime in aid of racketeering, and is premised on violations of the New York Penal Law – specifically, N.Y. Penal Law § 120.05(1) assault resulting in serious bodily injury and N.Y. Penal Law §§ 120.05(2) and 120.10(1) assault with a dangerous weapon – and these Penal Law violations all qualify as crimes of violence for purposes of Section 924(c)'s elements clause. Quiah's Davis challenge is therefore rejected.

## CONCLUSION

For the reasons stated above, the petitions (Dkt. Nos. 50 and 52 in 11 Cr. 739 and Dkt. No. 1 in 20 Civ. 4000) are denied. Quiah's motion for summary judgment (Dkt. No. 25 in 20 Civ. 4000) is likewise denied. The motion requesting "relief from stay" is denied as moot. (Dkt. No. 30 in 20 Civ. 4000) The Clerk of Court is directed to terminate Dkt. Nos. 50 and 52 in 11 Cr. 739, as well as Dkt. Nos. 1, 25, and 30 in 20 Civ. 4000, and to close Case No. 20 Civ. 4000.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for purposes of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a non-frivolous issue).

The Government is directed to serve a copy of this Order on pro se Petitioner and to file proof of service on the docket within seven days.

Dated: New York, New York
September 27, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge